# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| THOMAS MOYLER, JR., | ) | Civil Action No. 7:19cv00262 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| WARDEN KISER, <u>et al.</u>, | ) | By: Michael F. Urbanski |
|     Defendants. | ) | Chief United States District Judge |

Thomas Moyler, Jr., a Virginia inmate proceeding <u>pro se</u>, commenced this action pursuant to 42 U.S.C. § 1983, alleging that he was subjected to excessive force, denied adequate medical treatment, denied due process regarding grievances and emails containing photographs, and denied a varied diet during Ramadan. All defendants, except Officer Williams and Investigator Fannin, filed a motion to dismiss and the motion is ripe for disposition.[1] After reviewing the pleadings, the court will grant defendants' motion to dismiss. Accordingly, the only remaining claims are Moyler's excessive force claim against defendant Williams, and his email due process claim against defendant Fannin.

## I.

On February 9, 2019, while housed at Red Onion State Prison, Moyler was involved in a fight with another inmate. Moyler states that when the fight began, there were no floor officers present and the booth officers were not paying attention. After they "noticed the fight," officers yelled for Moyler and the other inmate to stop fighting and to get down on the floor. Moyler states that he was "dazed and confused," and did not hear the officers yelling. Defendant Officer Williams subsequently fired "shots" from the control booth and struck Moyler eleven times on his back, arm, head, and face. After the altercation stopped, defendant Sgt. Massingill escorted Moyler to the medical department and asked Moyler questions about who started the altercation. Moyler

---

[1] Defendants Williams and Fannin filed answers to Moyler's complaint. <u>See</u> ECF Nos. 33 and 34.

complains that he received inadequate medical treatment for his wounds which have left him "disfigured . . . for life."[2]

Moyler filed an informal complaint concerning Officer Williams' use of force against him and Sgt. Massingill responded to it, stating that Officer Williams had aimed for Moyler's lower extremities, but "unfortunately" shot Moyler in the face. Moyler contends that defendant Unit Manager Duncan moved Moyler to the A-Building after the fight because he intended to make it more difficult for Moyler to file grievances. He further alleges that defendant Grievance Coordinator Messer "stole" documentation attached to his grievances and refused to process the grievances. Moyler wrote letters to defendants Welch, Robinson, Shear, and Kiser, complaining about Messer's refusal to process the grievances.

Moyler also alleges that people have sent him emails which include digital photographs, and that defendant Investigator Fannin has "censored" and/or "confiscated" at least 200 of these emails without any notification to Moyler that the email had been censored or confiscated, or why it had been censored or confiscated. Moyler complains that he is unable to appeal Investigator Fannin's decision to censor or confiscate the emails and that the electronic postage fees are not refunded when the email is not delivered to him.[3]

Finally, Moyler alleges that his religious rights were violated when he received "the exact [same] meal every night and morning" during Ramadan, and that defendant Food Services Manager Scarberry refused to the change the menu.

---

[2] The court notes that Moyler subsequently withdrew his medical claims against defendant Nurse Practitioner Ball (see ECF No. 57) and he does not allege any medical claims against any other named defendants.

[3] Moyler summarily states that he is "now being retaliated against by investigators for filing" grievances concerning the emails. However, he does not allege how he was retaliated against or that any of the named defendants were involved in the alleged retaliation. Therefore, the court declines to construe his statement as a claim in this action.

**II.**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," id., with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, Chao v. Rivendell Woods, Inc., 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe pro se pleadings liberally. See, e.g., Boag v. MacDougall, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a pro se complaint raising civil rights issues." Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of pro se complaints are not . . . without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). "A pro se plaintiff still must allege facts that state a cause of action." Bracey v. Buchanan, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

**III.**

Moyler named Harold Clarke, Director of the Virginia Department of Corrections, as a defendant to this action but does not allege any facts against him. To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). Inasmuch as Moyler has not alleged any conduct committed by Director Clarke, the court will grant the motion to dismiss as to Director Clarke.

**IV.**

Moyler alleges that defendants Duncan and Messer interfered with his access to the grievance process and that defendants Massingill, Welch, Robinson, Shear, and Kiser denied grievances and/or failed to investigate Moyler's complaints or grievances that other defendants violated his rights. Moyler's allegations fail to state a cognizable § 1983 claim against these defendants.

Inmates do not have a constitutionally protected right to participate in the grievance procedure, see Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); see also Booker v. South Carolina Dept. of Corr., 855 F.3d 533 (4th Cir. 2017), and "[r]uling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation," George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007). Accordingly, the defendants are not liable under § 1983 for interfering with Moyer's access to the grievance process or their responses to the grievances or appeals. See Brown v. Va. Dep't Corr., No. 6:07cv33, 2015 U.S. Dist. LEXIS 12227, at *8, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009); see also Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the alleged underlying deprivation). Further, to the extent Moyler is alleging that the defendants failed to investigate his grievances or complaints, his claim still is not cognizable under § 1983. See Charles v. Nance, 186 F. App'x 494, 495 (5th Cir. 2006) (holding that alleged failure to investigate a grievance "fails to assert a due process violation"); Sweat v. Rennick, No. 9:11-2908, 2012 U.S. Dist. LEXIS 55200, at *5, 2012 WL 1358721, at *2 (D.S.C. Feb. 7, 2012) ("Plaintiff's complaint that this Defendant has not properly investigated his claims . . . fails to set forth a claim for a violation of a constitutional right."); Lewis v. Williams, Nos. 05-13, 05-51, 05-52, 2006 U.S. Dist. LEXIS 8444, at *18-19, 2006 WL 538546, at *7 (D. Del. Mar. 6, 2006) ("[T]he failure to investigate a grievance does not raise a constitutional issue."). Moreover, a state official's failure to abide by his or her agency's procedural rules and regulations does not, in and of itself, state a federal claim. See Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990) (stating that violation of state-created procedures does not violate the constitution if the plaintiff otherwise

received process he was due) and Morris v. City of Danville, Va., 744 F.2d 1041, 1048 n. 9 (4th Cir. 1984) (noting that the mere fact that a state agency violates its own procedures does not mean it has contravened federal due process requirements). Accordingly, the court concludes that Moyler's allegations fail to state a cognizable federal claim against defendants Duncan, Messer, Massingill, Welch, Robinson, Shear, and Kiser and, therefore, the court will grant the motion to dismiss as to these defendants.

V.

Moyler alleges that defendant Scarberry violated his religious rights by serving the same meal every morning and night during Ramadan. To state a viable claim under the First Amendment or the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), a plaintiff must demonstrate that the defendant prison official's actions or policies place a substantial burden on his free exercise of his sincere religious belief. Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 718 (1981) (First Amendment); Lovelace v. Lee, 472 F.3d 174, 185 (4th Cir. 2006) (RLUIPA). A substantial burden on religious exercise occurs when a government, through act or omission, "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Lovelace, 472 F.3d at 187 (quoting Thomas, 450 U.S. at 718). The plaintiff bears the initial burden of establishing that the government's actions substantially burdened his exercise of religion. See, e.g., Krieger v. Brown, 496 F. App'x. 322, 324 (4th Cir. 2012). In conducting the substantial burden inquiry, the plaintiff "is not required . . . to prove that the exercise at issue is required by or essential to his religion." Id. at 325 (citing Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005)). Nevertheless, "at a minimum the substantial burden test requires that a . . . plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than

6

an inconvenience to one's religious practice." Smith v. Allen, 502 F.3d 1255, 1278 (11th Cir. 2007). No substantial burden occurs if the government action merely makes the "religious exercise more expensive or difficult," but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his religion. Living Water Church of God v. Charter Twp. of Meridian, 258 F. App'x 729, 739 (6th Cir. 2007).

Certainly, selecting a certain diet for religious purposes qualifies as a "religious exercise." See Couch v. Jabe, 679 F.3d 197, 200 (4th Cir. 2012). However, Moyler has not alleged how providing the same food for meals during observance of a religious holiday placed a substantial burden on his religious exercise. Absent a substantial burden, Moyler has failed to state a First Amendment or RLUIPA violation. Accordingly, the court will grant defendants' motion to dismiss as to defendant Scarberry.

## VI.

For the foregoing reasons, the court will grant defendants' motion to dismiss. Therefore, only Moyler's excessive force claim against defendant Williams and his email due process claim against defendant Fannin remain.[4]

**ENTER**: This 13th day of January, 2020.

*/s/ Michael F. Urbanski*
Chief United States District Judge

---

[4] Defendants have filed a motion to sever Moyler's email due process and religious rights claims from the other claims in this action. See ECF No. 32. Moyler has not objected to severance of the claims. However, inasmuch as the court is dismissing Moyler's religious rights claim, the court finds no reason to sever that claim at this juncture. On the other hand, because Moyler's email due process claim is factually distinct and involves a different defendant, different legal theory, and different witnesses and/or evidence, the court will grant defendants' motion to the extent that it will sever the email due process claim from Moyler's remaining excessive force claim. The court will keep the excessive force claim in this action, as proposed by the defendants. See id.